**LONG FALLS REALTY COMPANY,**
**Appellant,**

v.

**ANCHOR ELECTRIC CO., Inc., et al.,**
**Appellees.**

**No. 16724.**

Court of Civil Appeals of Texas.

Dallas.

May 20, 1966.

Rehearing Denied July 1, 1966.

Goldberg, Akin, Gump, Strauss & Hauer and Robert L. Meyers, III, Dallas, for appellant.

Turner, Atwood, Meer & Francis and Robert C. McGuire and Esir Tobolowsky, Dallas, for appellees.

DIXON, Chief Justice.

This appeal requires us to determine the superiority between the claims of the holder of a recorded judgment lien and the assignee of a recorded deed of trust lien.

The litigation originated when Anchor Electric Company, Inc., filed a garnishment suit against T. W. Blandin, Trustee, who was holder of funds in the sum of $19,-531.04. These funds were the amount collected at a trustee's sale in excess of the amount needed to discharge a first mortgage on real estate.

Anchor Electric Company, Inc., was awarded judgment for $3,936.91. No one attacks Anchor's judgment so it will be affirmed. But ownership of the balance of $15,594.13 is in dispute between the rival lien holders, who are appellant Long Falls Realty Company and appellee Sturbridge, Inc. Both of them are among the creditors impleaded by Anchor Electric Company, Inc., in its garnishment suit. In a nonjury trial judgment was rendered in favor of appellee Sturbridge, Inc.

## FACTS

The facts are practically undisputed. The events in chronological order which gave rise to this controversy are as follows:

1. On July 8, 1959 L. A. Peterson, John T. Harris and R. F. Ford, Jr., owners of property known as 7135 Carpenter Freeway in Dallas, placed a first mortgage in the amount of $40,000 against their property. It was this mortgage which was foreclosed. Neither the first mortgage nor the foreclosure are in dispute.

2. In January 1961 John T. Harris, for a consideration of $5,000, conveyed his one-third interest to L. A. Peterson, who thus became owner of a two-thirds interest in the real estate. Peterson was engaged in business as a building contractor, with his principal office located on the property.

3. In May 1961 Peterson incorporated his business under the name L. A. Peterson, Inc. The corporation took possession of the property and continued the construction business with its principal office at the same location.

4. On May 31, 1961 L. A. Peterson by warranty deed conveyed his two-thirds interest in the real estate to L. A. Peterson, Inc. This deed was not recorded until some time later, a fact which has given rise to this controversy.

5. On January 18, 1962 R. F. Ford, Jr., by warranty deed conveyed his one-third interest in the property to L. A. Peterson, Inc. This deed was duly recorded.

6. On February 18, 1963 the corporation executed two deeds of trust: one to Business Funds, Inc., for $200,000, which deed of trust was filed for record on February 28, 1963; the other to Growth Capital, Inc., for $300,000, which instrument was not filed for record until February 10, 1964. These loans were secured by mortgages on several pieces of real estate, including the property here involved.

7. On June 19, 1963 the above mortgage to Business Funds, Inc., was assigned to appellee Sturbridge, Inc.

8. On January 6, 1964 an abstract of judgment in favor of Long Falls Realty Company against L. A. Peterson was filed in the Abstract of Judgment Records of Dallas County.

9. On April 6, 1965 the warranty deed of May 31, 1961 from L. A. Peterson to L. A. Peterson, Inc., was filed for record in the Deed Records of Dallas County. This was the deed by which Peterson conveyed his two-thirds interest in the real estate to the corporation.

L. A. Peterson testified that as of the date of the incorporation of L. A. Peterson, Inc., he owned all but two of its 25,000 shares of stock. His wife owned one share and his brother the other share. The original directors where L. A. Peterson, R. C. Peterson, Frank Zitzman of Growth Capital, Inc., James R. Cash and B. W. Morris.

The corporation immediately went into possession of the premises at 7135 Carpenter Freeway and continued in possession until the foreclosure.

In the main the business procedures of the corporation were much the same as when L. A. Peterson individually was the owner. However, Peterson testified that the deeds of trust to Business Funds, Inc., and Growth Capital, Inc., were signed by him as President upon instruction of the Board of Directors as reflected by the minutes of the corporation.

On April 6, 1964 Peterson's stock, in fact all of the stock in the corporation, was foreclosed on by Growth Capital, Inc., and Sturbridge, Inc., and they took title to the stock. Peterson was ousted as President. He again became President on June 30, 1965. At the time of the trial he owned 15,000 shares of stock which he had purchased for $5.00 and other considerations. Sturbridge, Inc., owned the other 10,000 shares.

## OPINION

No findings of fact and conclusions of law were requested and none were filed by the trial court. Therefore "we must assume that the court's findings were all in support of its judgment; and the judgment must be affirmed if there is any evidence of probative force to support it upon any theory authorized by law." City of Abilene v. Meek, Tex.Civ.App., 311 S.W.2d 654, 656 (Writ ref.).

It is appellant's contention in this case that as a matter of law the abstract of judgment claim of appellant is superior to the deed of trust lien of Sturbridge, Inc., with respect to two-thirds of the fund in question, therefore we should reverse the trial court's judgment and render judgment for two-thirds of the balance of $15,594.13.

Appellant relies on Art. 6627, Vernon's Ann.Civ.St., which provides that " * * * all deeds of trust and mortgages shall be void as to all creditors * * * unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law; * * *." It will be noted that Peterson's deed to the corporation of his two-thirds interest in the real estate was executed *prior* to the recording of appellant's judgment and *prior* to the execution and recording of appellee's deed of trust; but it was not recorded until *after* the recording of appellant's judgment and *after* the execution and recording of appellee's deed of trust.

Nevertheless, appellee contends that since the corporation had actual physical possession of all the premises at 7135 Carpenter Freeway prior to the recording of appellant's judgment and at all times thereafter until the foreclosure sale, appellant was put on notice to inquire of L. A. Peterson, Inc., the occupant, concerning its claim. And if such inquiry had been made appellant would have learned that L. A. Peterson, Inc., claimed title to all the premises under its

unrecorded deed from L. A. Peterson individually.

We agree with appellee. It is well established in our law that actual possession of real property is prima facie evidence of ownership and puts the world on notice to inquire of the person in possession concerning the latter's claim. This is true even when the person in possession of the entire tract of land holds record title to only a portion of it. The rule is applicable to holders of recorded judgments. Wimberley v. Bailey, 58 Tex. 222; Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, 460, rehearing denied 98 Tex. 162, 83 S.W. 184; Newman v. Phalen et al., 214 S.W. 958 (Tex.Civ.App., no writ hist.); Kelly-Springfield Tire Co. et al. v. Walker, Tex. Civ.App., 149 S.W.2d 195 (error dism.); Garner v. McKinney, Tex.Civ.App., 255 S.W.2d 529. See also First State Bank of Amarillo v. Jones, 107 Tex. 623, 183 S.W. 874; Hayward Lumber Co. v. Bonner, 56 Tex.Civ.App. 208, 120 S.W. 577; Mattfeld v. Huntington, 17 Tex.Civ.App. 716, 43 S.W. 53; Garth v. Stuart, 59 Tex. Civ.App. 391, 125 S.W. 611 (wr. ref.); Boedefeld v. Johnson, Tex.Civ.App., 201 S.W. 1027.

In Collum v. Sanger Bros., supra, our Supreme Court said:

"In the recent case of Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258, it was expressly stated as a general rule that the fact that the possession of one holding land is consistent with the recorded title does not exempt a purchaser from the duty of inquiring of him as to any other title. We think it a safe and salutary rule to require of a prospective purchaser of land to ascertain whether any other be in occupancy of it; and, if there be such possession, to go to the possessor and ascertain the nature and extent of his claim. Possession is evidence of title, and, it seems to us, that common prudence and common honesty demand this course. If so, the possession should be notice to him; and, if notice to a purchaser, it is notice to a creditor."

Appellant asserts that L. A. Peterson, Inc., was nothing more than the alter ego of L. A. Peterson. That fact, if it is a fact, does not help appellant's cause. Alter ego corporations are not of themselves illegal. Commonwealth of Massachusetts v. Davis et al., 140 Tex. 398, 168 S.W.2d 216, 224. It is not alleged in this case that A. L. Peterson was guilty of fraud in changing his individually owned business into a corporation, or that his conveyance of his real estate to the corporation was for the purpose of defrauding his creditors, or that he deliberately or intentionally failed to record said conveyance. The evidence is that the deed was mislaid in a lawyer's office when the lawyer moved his office from one building to another. The record does not show that appellant's debt which furnished the basis for its judgment was in existence when Peterson conveyed his property to the corporation in May 1961.

Appellant's brief presents only one point on appeal in which it takes the position that its abstract of judgment claim is superior as a matter of law to the lien of appellee because appellant had no notice, actual or constructive, "of the unrecorded claim of Sturbridge." The assignment of the Business Funds, Inc., mortgage to Sturbridge was not recorded, but the fact of the assignment is not disputed. The mortgage from L. A. Peterson, Inc., to Business Funds, under which Sturbridge claims by assignment, was filed for record prior to the recording of appellant's judgment. It was Peterson's deed of his two-thirds interest to the corporation which was not filed until after the recording of appellant's judgment.

Appellant's point on appeal is overruled.

The judgment of the trial court is

Affirmed.