**Harris P. HOOVER, Appellant,**

**v.**

**Dorotha M. REDWINE et al., Appellees.**

**No. 16378.**

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 14, 1962.

Rehearing Denied Jan. 11, 1963.

James E. Forbis, Decatur, and Thorp A. Andrews, Fort Worth, for appellant.

Woodruff, Morgan & Nobles, and Wm. A. Nobles, Decatur, for appellee.

RENFRO, Justice.

This suit was brought by Mrs. Dorotha M. Redwine, a widow, to establish her undivided interest in a 100 acre tract of land in Wise County, Texas. On December 4, 1944, Amy Boyd executed a warranty deed to the property in question "for and in consideration of the sum of Ten and No/100 ($10.00) Dollars Love and Affection to me paid, by J. H. Redwine as follows: $10.00 cash in hand paid, the receipt of which is hereby acknowledged * * *." At and prior to the date of the above deed, J. H. Redwine, grantee in the above mentioned deed, and Dorotha were husband and wife and owned as community property a 60 acre farm.

Although there were several parties plaintiff, we will, for convenience, refer to Dorotha M. Redwine as plaintiff.

It is the theory of the plaintiff that the actual consideration for the deed to the 100 acres was the conveyance by J. H. Redwine and Dorotha Redwine of their community 60 acres to E. H. Huston for $1,600.00 cash, which cash was paid to Amy Boyd and George Redwine. Amy Boyd held legal title to the 100 acres and George Redwine owned a beneficial interest therein.

J. H. Redwine died intestate and left surviving him his wife and twelve children or heirs of deceased children.

Six of the surviving children conveyed an undivided one-twelfth interest each to defendant Harris P. Hoover.

The other children recognized their mother's claim to an undivided one-half community interest in the land by joining her as plaintiffs in the law suit.

The court's judgment was in conformity with plaintiff's contentions, and the interests of plaintiff, the defendant Hoover, and

other interested parties were fixed accordingly.

Trial was had before the court without a jury. The court filed the following findings of fact and conclusions of law:

"I find as a fact the following:

"1. That J. H. Redwine and Dorotha M. Redwine (sometimes known as Dortha Redwine) were husband and wife and that J. H. Redwine died intestate in Wise County, Texas in about the year 1951.

"2. That on December 4, 1944, Amy Boyd conveyed the 100 acre tract of land in controversy in this suit to J. H. Redwine for a recited consideration of '$10.00 love and affection'.

"3. That on December 8, 1944, J. H. Redwine and wife, Dorotha Redwine owned as community property a 60 acre tract of land situated in Wise County, Texas and did pursuant to an agreement with Amy Boyd and J. H. Redwine to do so, conveyed said 60 acre tract of land to E. H. Huston for a recited consideration of $1600.00 cash, which was not paid to J. H. Redwine and wife Dorotha Redwine.

"4. That the true consideration for the sale of a 60 acre tract of land was the conveyance of a 100 acre tract of land herein in controversy to J. H. Redwine for the use and benefit of himself and plaintiff, Dorotha Redwine.

"5. That J. H. Redwine and Dorotha Redwine resided upon the 100 acre tract of land herein in controversy from about December 8, 1944, to the date of the death of said J. H. Redwine and that said Dorotha M. Redwine has continued to reside and make her home upon said 100 acre tract of land to the date hereof; claiming to own an undivided ½ interest therein.

"6. That Harris P. Hoover, the defendant herein, had actual notice of Dorotha M. Redwine's possession of the 100 acre tract of land in controversy prior to, at the time of, and after the purchase of an interest therein.

"7. That Harris P. Hoover, defendant, did not inquire of Dorotha M. Redwine, plaintiff, as to the nature and extent of her claim of interest in and to the 100 acre tract of land herein in controversy.

"8. That plaintiffs, Pearl McClung, Dolly Grissom, Lewis Redwine, Ethel Donoho, Irene Rogoski, H. J. Redwine, Ruth Denny, C. L. Redwine, Lewis Redwine and Dolly Grissom, as guardians of the persons and estates of Ruth Redwine, a person of unsound mind, are surviving heirs at law of J. H. Redwine, deceased.

"I conclude as a matter of law that:

"1. The 100 acre tract of land in controversy in the suit was the community property of J. H. Redwine and wife, Dorotha M. Redwine and not the separate property of J. H. Redwine.

"2. That plaintiff, Dorotha M. Redwine, owns and is entitled to an undivided ½ interest in and to the 100 acre tract of land herein in controversy as her community share of the same.

"3. That plaintiffs, Pearl McClung, Dolly Grissom, Lewis Redwine, Ethel Donoho, Irene Rogoski, H. J. Redwine, Ruth Denny, C. L. Redwine, Lewis Redwine and Dolly Grissom, as guardians of the persons and estate of Ruth Redwine, a person of unsound mind, own and are entitled to an undivided ¼ interest in and to the 100 acre tract of land herein in controversy.

"4. That defendant, Harris P. Hoover, is not a bona fide purchaser for value without notice of the claim of Dorotha M. Redwine because he had actual notice of the residence upon, and possession of said 100 acre tract of land herein in controversy and failed to inquire into the nature and extent of her claim.

"5. That defendant, Harris P. Hoover, as the grantee of James Coy Redwine, Thomas Paul Redwine, Clara Bell Wester et vir, Effie May Lyons et vir, C. C. Redwine and Alma King et vir, owns and is entitled to an undivided ¼ interest in and to

the 100 acre tract of land herein in controversy."

Hoover appeals on fourteen points of error. In his first seven points he challenges findings Nos. 3 and 4 and all of the conclusions of law as being without any evidence to support them, and in the other seven points challenges the court's findings Nos. 3 and 4 and all of the conclusions of law as being supported by insufficient evidence. None of the other findings of fact are challenged by Hoover.

The deed from plaintiff and her husband to E. H. Huston was executed on December 8, 1944. Plaintiff testified that her husband's Uncle George told J. H. Redwine that he could sell the 60 acres owned by J. H. and Dorotha but could not sell the 100 acres owned by himself and wanted to "swap" the 100 acres for the 60 acres; the "swap" was made; "Jim and George made the swap"; the 60 acres were conveyed by plaintiff and her husband to E. H. Huston; neither plaintiff nor her husband ever received a cent of the $1,600.00 purchase price for the 60 acres which they conveyed to Huston; the deed to the 100 acre tract had been executed to plaintiff's husband before they executed the deed to the 60 acre tract; she and her husband never received anything for the 60 acres in money or otherwise, except the 100 acre farm in question; she and her husband moved on the 100 acres in 1944, and she has continued to reside thereon ever since; they moved on the farm before the deeds were executed; the 100 acres have been her homestead since she and her husband moved on the farm. Plaintiff's son Dan has lived with his mother all of his life.

Dan Redwine testified that before his father and mother conveyed the 60 acres to Huston, a deed had been made to his father conveying 100 acres of land to him; Huston did not pay the $1,600.00 to his (Dan's) father and mother, although he was not present when the deed was delivered to Huston.

Mrs. Howard Lyons, one of the children who had conveyed her interest to Hoover, testified that she knew about the alleged "swap" of the 60 acres for the 100 acre tract, but she did not tell Hoover about the claim of Dorotha. At one point she testified, referring to Dorotha, "Q She never did agree to give up her interest, and you never would agree to sign the division order unless she did? A That's right." She knew all along that her mother had been claiming a half interest in the farm.

James Coy Redwine, another of the children who had executed a deed to Huston, testified that he had heard about the above mentioned "swap" of farms but he did not tell Hoover, but did tell Hoover his mother was claiming a half interest in that farm as long as she lived; the real trouble between witness and his mother was that witness feared his mother would give her half interest to Dan.

Mrs. Huston testified she and her husband paid $1,600.00 in cash for the 60 acre farm; the money was put down on the desk of the real estate man who closed the deal and she "really don't know who took the money."

Mr. Hoover testified that he thought the 100 acre tract was the separate property of J. H. Redwine because of the love and affection recital in the Boyd deed, and the advice of a lawyer that the recital indicated it was a gift from Amy Boyd to J. H. Redwine; before buying any interest from any of the children he visited the farm and knew that plaintiff and Dan were living on the farm, and knew that plaintiff at least had a homestead right therein; he never required an abstract of title to the property and took only a certified copy of the Amy Boyd deed to his attorney for examination; he made no investigation as to the status of the title and got no written title opinion from any attorney; he never inquired of plaintiff as to her interest in the farm or her right of possession.

■ It is contended by Hoover that some of the evidence was hearsay. We find, how-

ever, that during the trial the court said: "Let me make a clarification, Counsel, while we're at it. When I review this matter, and I'm going to review it before I rule, I'm going to weed out some of this testimony I think is inadmissable or possibly inadmissable, so you can be guided accordingly." We assume that the court did not take into consideration any inadmissible testimony. Waxler v. Klingemann, Tex.Civ.App., 272 S.W.2d 746; Garcia v. Bradley, Tex.Civ.App., 311 S.W.2d 751; Ransom v. Ransom, Tex.Civ.App., 252 S.W.2d 212, error refused; Republic Ins. Co. v. Inverness Estates, Tex.Civ.App., 252 S.W.2d 251, error refused.

Plaintiff was 85 years of age at the time of trial. Her memory for dates and details was faulty but she was firm in her testimony of the "swap" of the community 60 acres for the 100 acres. Her testimony of the "swap" was corroborated by her son, and, in part, by two of her children who were witnesses against her.

■ The court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. We believe the evidence and the reasonable deductions to be drawn therefrom were sufficient to uphold the trial court's findings of which complaint is made.

Hoover contends that even though the 100 acre tract was community property, he was an innocent purchaser for value without notice.

As seen in the summary of his evidence above, he was not an innocent purchaser without notice.

■ In Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 109 A.L.R. 739, it was said: "A purchaser of land must search the records, for they are the primary source of information as to title and he is charged with knowledge of the existence and contents of the recorded instruments affecting the title.

Smith v. Crosby, 86 Tex. 15, 22, 23 S.W. 10, 40 Am.St.Rep. 818; Leonard v. Benford Lumber Company, 110 Tex. 83, 216 S.W. 382. He must also make inquiry as to the rights or title of the possessor, for possession is equivalent to registration, in that it gives constructive notice of the possessor's rights."

And in Collum v. Sanger Bros., 98 Tex. 162, 82 S.W. 459, it was held: "We think it a safe and salutary rule to require of a prospective purchaser of land to ascertain whether any other be in occupancy of it; and, if there be such possession, to go to the possessor and ascertain the nature and extent of his claim. Possession is evidence of title, and, it seems to us, that common prudence and common honesty demand this course. If so, the possession should be notice to him; * * *."

■ In the instant case Hoover had actual knowledge, before he bought any interest in the land, that plaintiff was in possession; that she was the surviving wife of J. H. Redwine. He knew, from her son-in-law, that she at least claimed an undivided one-half interest for life. Although he drove around the farm he did not stop to inquire of plaintiff, or her son Dan, what interest other than homestead right she claimed in the property. Both could and would have informed him that plaintiff claimed an undivided one-half interest as community property.

In view of the whole record, we hold that the evidence was sufficient to support the conclusions reached by the trial court. Our view, in addition to the above authorities, is supported by Buckalew v. Butcher-Arthur, Inc., Tex.Civ.App., 214 S.W.2d 184; Ramirez v. Smith, 94 Tex. 184, 59 S.W. 258; and Park v. Sweeten, Tex.Civ.App., 270 S.W.2d 687, affirmed, 154 Tex. 266, 276 S.W.2d 794.

The judgment is affirmed.